May it please the court, I am Jose Bracamonte, representing the petitioner Favela-Garcia. Petitioner seeks review of a BIA decision affirming the IJ decision to deny a motion to reopen of an in absentia order of removal. Petitioner was ordered removed in absentia after arriving 20 to 30 minutes late to a merits hearing. The immigration judge was informed of her presence after entering the courtroom and after the judge had recently retired from the bench, but was still in his office across the hall from the courtroom within regular business hours. Was her lawyer there? Yes, sir. Yes, ma'am. Her lawyer at the time was there, had been there previously on time, and he was the one that informed the judge of her presence. The judge refused to hear the case. I then assumed responsibility for the case and filed a motion to reopen within 35 days of that decision, and that was supported by a sworn affidavit and medical documents. The immigration judge's decision on the motion to reopen was one sentence, simply saying that exceptional circumstances had not been demonstrated. That decision was then appealed to the Board of Immigration Appeal that upheld and affirmed the immigration judge's decisions with a one-paragraph decision that simply reiterated the petitioner's argument that she was late for medical and psychological reasons, but entered into no further analysis. It is the petitioner's contention that the denial of the motion to reopen is an abuse of discretion on at least three rationales. Well, we have a recent case out of this court where that's precedent that we have to deal with, where someone was denied extraordinary circumstances where there was asthma involved. Are you familiar with that case? No, I am not. I apologize. Vukmarevic is the last decision that I looked at, most recent decision that I looked at, and I was not aware of any other decision. So you're not in a position to distinguish your case from that case? I am not, Your Honor, although I would ask Lee to be able to do that in writing after oral argument. We'll let you know if we need it. Thank you, Your Honor. There's at least three bases for an abuse of discretion. One, the petitioner's tardiness was a result of a serious illness beyond her control. Second, the decision by both the BIA and the immigration judge did not consider and address in its entirety the evidence submitted by the petitioner. Neither decision entered into a particularized holistic analysis of the factors in this case as required by Singh and Vukmarevic. One of the factors in the cases that have not relied strictly on the reason for the lateness has been how likely she was to succeed. Right. The factors that have been generally, if I understand the question, and please correct me if I don't, the factors that have been looked at is how late was she? Was it tardiness? Was it during business hours? Was the judge available? Was the judge informed of her presence in a timely manner? Third, had there been a history of tardiness in the past in any of the previous hearings or any failures to appear in any previous hearings? Third, did the person in this case have legal permanent residence? Was the person have a status? Was she merely trying to avoid the inevitable? And that's certainly not in this case. The likelihood of success, right? Pardon? The likelihood of success. Correct. But in this case, previously she tried to terminate these proceedings because she said she was entitled to 212C relief, and the court denied the termination. So and she apparently has this drug conviction where she pled guilty. What is her likelihood of success? That's very important. Let me address that. The motion to terminate was based on the charge that she was convicted of a controlled substance offense. Since that conviction had been expunged under Arizona law 13907, prior to that, in the year 2000, that conviction was no longer usable under the Lujan Armendariz decision as a controlled substance conviction. So, therefore, there was no basis for proceeding. So the government then moved under a reason to believe ground. Under a reason to believe ground, we don't need to use 212C. She is eligible under 42A, under the 240A of the Act, a cancellation for certain permanent resident aliens. She had acquired both the time as to legal residents, as to residents, and as to legal status to be eligible. Now, we're talking about a conviction or an incident, because there's no conviction at this point. Well, expungement doesn't always solve the problem. Correct. For immigration purposes. It may solve your problem for other reasons, but does that conviction, are you saying it no longer exists for immigration purposes? That is exactly what I'm saying. That is correct. Because it was a first Federal offender. That's correct, Your Honor. That's correct. So there is, in this case, there is no cognizable conviction. So the government moved to try to remove her under a reason to believe argument, because when she was arrested, that resulted in the possession conviction. She had an amount that was beyond personal use and could arguably be used as a reason to believe. But a reason to believe argument can be waived under Section 240A of the Act. And she would have been eligible for that. Not only that, we're talking about a conviction or, strike that, an incident that occurred in 92. We're talking about a hearing that's occurring in 2006. So it's fairly stale. She's been a long-term resident of the United States. She has had no other infractions or convictions or incidents since that time. She has U.S. citizen children. All of that would tend to indicate that she had a very good likelihood of succeeding. Indeed, the BIA in a matter of Grijalva seems to hold, in a similar fashion, that that individual being a legal permanent resident and having a waiver available was not being laid simply for the purposes of avoiding the inevitable. So there was an excellent opportunity to prevail on the waiver in this case. So if I may then get back. We believe that she even falls within the plain language of the statute. There was a serious illness here. We presented evidence that she had, for some months prior to the hearing, been under a doctor's care for abdominal pain. The affidavit indicates that she was suffering that pain the night before the hearing. We, in the affidavit, specifically noted the medication she was taking, hydroxycine and ranitidine, and I hope I'm pronouncing those correctly. One of those has a drowsiness as a recognized side effect. She was in the midst of a battery of medical tests that indeed continued after the merits hearing, in which her doctor had articulated to her the concern that she might have abdominal cancer. So that put her into even more of a psychological turmoil. And we believe, although there's no evidence, and I'm not stating that she was ultimately diagnosed with cancer. I don't believe there's nothing to indicate she was. But that doesn't eliminate that situation from being a serious illness. I don't believe that it's ultimately the conclusion of whether she was actually had a certain disease or not, but whether she could demonstrate that she was undergoing a battery of tests, and prior, not at the last minute, but months prior to the merits hearing. So we believe that she comes within the plain language of the statute. Second, neither decision enters into either a particularized or totality of the circumstances analysis. If it did, the only rational conclusion would have been that the motion would have been granted. The tardiness was de minimis. The petitioner had 14 to 16 years as a legal permanent resident. She had absolutely no reason to delay. Prior to the in absentia order, there had been no finding of removability, because remember, the government would have the burden of showing that there was reason to believe that she was a trafficker in drugs. That had not been resolved yet. She had been to five previous master calendar hearings, nothing indicating that she was late or had problems with punctuality. She has U.S. citizen children. And the judge had recently retired and was readily available, which leads me to the third basis, is that we believe in this case another argument is that there was no failure to appeal. But you never made that argument, did you? Pardon me? You haven't made that argument. I have not made it in the briefs. That is correct, Your Honor. Or to the BIA. Or to the BIA. That is correct, Your Honor. I did not. Seems like a pretty good argument. I agree. I totally agree, Your Honor. I did not. But we believe that for the other two reasons we did and articulated to them that she was ill, provided the supporting documents. And I think it's reasonable to, in the course of human existence, that if you're in the process of taking a battery of tests in which it might conclude that you have been exposed to some sort of psychological turmoil and that caused her to be late by 20 to 30 minutes. I think she was actually at the courtroom by 20 minutes, but the judge was not informed until the 30-minute mark. So that's why we used those two, that time framework. Well, what is the evidence in the record? That seems to be not, you know, it's not what the evidence is in what you say in the briefs. The evidence is what's in, you know, what is the evidence in the record about when she arrived? It's her statement in her sworn affidavit that's not contradicted by either the immigration judge, the trial attorney's brief, or by the Board of Immigration Appeals. It's uncontradicted. She states in page ---- Well, where did the factual representation come up that the judge was still on the bench? Is that in an affidavit, or is that just in a brief and then it was corrected by a letter, or what's the ---- No, that was, I'm sorry, Your Honor, as to the judge being, not being on the bench and his, where his location was at the time she arrived was only upon information and belief based on my conversation with Mr. Hugo Larios, who is a practitioner and was in Arizona, in Phoenix, who was representing her at the merits hearing. And it's only in the brief. Her affidavit does not state, as I recall, does not state, no, I'm sorry, it does not state that I was late by about 15 to 20 minutes. Again, neither the trial attorney's brief nor the immigration judge's decision contradicts it. I have an affidavit from a lawyer saying whether the judge was on the bench or whether the judge was next door, or we just don't know what the evidence is on that. No. As to that, we just don't know, Your Honor. That's correct. Do you know what time the hearing was set for? What time the hearing was set for, sir? It was set for 8.30. It was a merits hearing set for 8.30 in the morning. It would be a reasonable presumption that the judge, if he wasn't on the bench, hadn't left for the golf course by then. I believe that is correct, sir. Thank you very much. Thank you. Good morning. Good morning. May it please the Court. Dallin Holdick for the Attorney General. This is a simple case of Ms. Favela-Garcia's failure to meet a very strict statutory legal burden of demonstrating exceptional circumstances, which require not just circumstances beyond her control, but situations at least as compelling as death of a parent, child, or spouse, or serious illness. Her claims were simply not enough for the strict standard. She did not demonstrate. But there is a set of case law, though, which seems to take a more holistic view of the situation. So what about that? That's correct, Your Honor. But I believe every single one of those cases, this Court must begin with a statute. I'm sorry? Every one of those cases make an analysis of the statute. And the statute requires that the situation must at least be as serious as serious illness of the individual or death or serious illness of the parent, child, or spouse. It's very strict standard. The statute requires that the individual or the parent, child, or spouse, or death  of the parent, child, or spouse, or death, or serious illness. I mean, you know, it might be nice to disregard the cases, but you can't say we begin with the statute. Look at the cases and say, you know, whether this meets them or doesn't meet them. That's correct, Your Honor. And we listed several of them. But you're a vampire precedent, like it or not. No. And that's very true. And I think that we listed several cases in our brief which go to that exact point. I think, for example, the asthma case that Your Honor was talking about was Celes Castellano, which was in 2002. They submitted a declaration in medical form showing that they had asthma, a true serious illness. But at the same time, that was not enough to demonstrate exceptional circumstances. Okay. But then if we want to look at it, I mean, probably her is more compelling than that one in the sense that I think in that particular case in Celes Castellano's, he presented his declaration, he suffered from a serious asthma attack on June 20th, four days before the hearing. He also submitted a letter from Kaiser Permanente stating that he had been seen and diagnosed with asthma two weeks after the hearing. The Court held that it wasn't an abuse of discretion to deny the motion there. Okay. Here, and he never showed at the hearing at all either. All right. She showed up 15 to 20 minutes. Those are our facts. Her lawyer was there at the time the case was called. And her medical information is more surrounding of the circumstances. So, you know, the question is, does that – I think I can look at distinguishing things. The question is, is that enough or not? Well, Your Honor, there are several points there that I want to make. The first is her presence was still required at the hearing regardless of whether or not her lawyer was there. But that's aside from I think the main point Your Honor wants me to address, which was her evidence. Well, I know.  Is that, you know, I mean, they're, you know, we're required to look at things and look at the cases and work around them. And probably at some point we could all agree that maybe 10 seconds late because you went to the bathroom, you know, that wouldn't be, you know, that would be an abuse of discretion. But on the other hand, you know, we have some cases you have – your best case is Celise Castellano. But I guess the other question that I have is, which I don't think that you address, is does she have a – Ken, does she have a likelihood of success on the merits? Because that is something that we apparently have to peek under the covers, not adjudicate the merits of that. But let's just say, for example, she had two convictions that would just knock her out right away and there would be absolutely no chance. Because she's already – isn't she already deported? She has already been removed to Mexico. Yeah. Your Honor, there are several points there. Let me see if I can address them in an ordered fashion for me. Well, I want to know what her likelihood of success is. Okay. Because she said, oh, she's going to succeed. I think the first point is that issue is not before the Court, because the way the statute is written, when this Court reviews an inabstantial order – But that's not our case law. You're now fighting the case law again. But that is the case law, because that is what the statute requires. The statute requires an inabstantial order that we are limited to for the issue. This case last month in Vukmarovic is not pertinent? Right. Vukmarovic, actually, though, the issue that was reviewed in that case, which, as we 20-H aid, was the Court did look towards what the circumstances were. That's what the statute directs this Court to. And the circumstances included the fact that he was the beneficiary of approved visa petition, and therefore, he would not have been deported had he been there on time. Well, then I'll just go directly to that issue. The point is likelihood of success on the merits. I don't believe that, first of all, that's before the Court. But if it is before the Court, I think that this Court would look to that and see, first of all, she was charged with removability for admitting to facts that constitute a drug trafficking crime. So there's no question her removability has been conceded. She didn't argue it to the Board. The removability is set. It's not properly before this Court. Which is conceded, I'm sorry? On the drug trafficking offense is conceded? Right. That's a done deal. She has conceded that she's removable based on admitting to facts that constitute a drug trafficking crime. It's not whether or not she was convicted. It's whether or not she has admitted to facts that would constitute a drug trafficking crime. And when did she concede that? She conceded that when she was before the immigration judge and she didn't challenge that decision to the Board. So it's done. She should have raised that in her brief to the Board. She didn't brief to the Board. There was no brief. There was just a notice of appeal. But I think the more important issue that I want to make sure and address your question is she had applied for cancellation of removal. And that the problem about that is we don't know what her likelihood of success is there. Except we know from St. Cyr that the overall likelihood of success in these cases was at that time very high, something like 50 percent. Well, in 212C cases. Right. Hers is a cancellation of removal case because she's a 42B case. So she would actually be applying based on the fact that she would be seeking cancellation of removal. I may be incorrect there, but I think you're incorrect. Either way, she's applying for discretionary relief in front of the agency. And we're not sure what the agency would decide on her discretionary application because we haven't heard evidence of it. And that's actually an important point that I do want to make. Well, it kind of cuts both ways. Because if she has a chance to get it, then, you know, I mean, the reason that you look at this, whether you want us to or not, is you have to look at whether the person, you know, did they come to court all the other times is, for example, you were sitting there where someone didn't they let something lie for eight years. Okay. It matters how late you are. It matters if your lawyer shows up. It matters if you went to other court, you know, if you went to other court dates. It matters if, you know, why you're doing something. And if you actually have a chance to get relief, it matters in terms of the overall assessment of whether it's an abuse of discretion. Because if clearly she was not or say clearly say she showed up eight years later, that's a different case. It's true, Your Honor. But I don't understand how we get past the statute. If the statute does require exceptional circumstances. We have to look at the statute, but then if our case law interprets the statute, then we're bound by our case law unless we go en banc. Right. But the problem is, is that none of the cases actually support her case. Why is that? Okay. All right. So let's go through. We can go through each of the cases, Vukmarovic, as we do it in two minutes. I will do it as fast as I can. Vukmarovic, as we pointed out, the Court found in that case that they weren't seeking to delay the inevitable. That could quite possibly be the case here. Her motion to terminate was unsuccessful. And therefore, she had not been – she was unable to terminate her proceedings and she was having to proceed on a discretionary grant from the agency. Who knows if she would have been successful in that. If you look at the next group of cases are all time-based cases. I don't think we really have a time issue here because the I.J. was no longer on the bench. And the Gerizano case would have been, if she would have showed up a minute late, like Your Honor pointed out, and the I.J. was still on the bench, it would be a totally different situation. Because an I.J. would have to allow her to proceed at that point if they were still on the bench. But if you look at the group of cases where individuals actually submitted evidence of having a serious illness, which I dispute that is what the evidence is here. And I'll get to that in a second. But if you look at Celia Castellano's declaration of medical form of asthma, you have they submitted evidence of diarrhea. Herrera-Berrera, medical reports of memory loss. Zhu, which was hypoglycemia. They at least had evidence that they had a serious medical condition. What we have here is Petitioner's declaration saying she may have had cancer, which, as opposing counsel pointed out, that's no longer been established. But she did take pain medication to make her sleep. The problem in this case, if this Court finds that this type of case constitutes a serious medical illness, just simply based on her statement. You don't have to find a serious medical illness. You know, it's the totality of the circumstance. Cheda Juarez says even if the circumstances that caused the plaintiff to miss the hearing were not exceptional, the totality may constitute exceptional. That's why you look at all four factors. Well, and that's true, Your Honor, but I don't think we even have the first factor. I don't think we have exceptional circumstances. What we have in this case. You don't have to have all four factors to have exceptional circumstances. I believe, Your Honor, that there's no case out there that says that you can completely disregard the statute. And the statute does require exceptional circumstances. Okay. Well, this is where we started. Right. Let me assure you, nobody thinks you can completely disregard the statute. You seem to think that our cases completely disregard the statute. But we're not going to totally disregard the statute if that makes you feel any better. That's great, and I appreciate that. Okay. Now your time is gone. I have nine seconds. But just simply to conclude, I would say that the agency followed the statute. They also followed the case law. There's no case law out there that says that this would be exceptional circumstances or in the totality, that it would actually have accumulated that. And I don't think there's any evidence the agency acted in an arbitrary, capricious or illegal manner. Thank you. I would like to make one point that was misstated very quickly. There was no admissions of the facts. Under Romero, the Romero case, and I wish I had the exact site, but under the Romero case, when you have a Federal first offender statute, an easy way of getting around that would simply be saying don't talk so fast. I apologize. Right about the clock, we'll give you two minutes for rebuttal. Okay. I have a question. Yes, ma'am. If, in fact, the conviction were wiped out, then 212C wouldn't apply. Is that right? If the conviction were wiped out. What would apply would be cancellation of removal for illegal permanent residence at that time, which still has a St. Cyr-like exception. That is correct. Okay. Yes. And also there's been no finding of removability, no admission of the elements of a controlled substance offense. That's a very specific type of admission. And you would, if you allowed that, and I think that's what Romero basically held, if you allowed to an end round, an end run around the Federal first offender statute by simply saying you already admitted the elements because you were convicted on this offense, but now it has been expunged. But are you saying that in the earlier, and I don't know the answer to this, that in an earlier appearance she conceded removability. Is that right? That's not my understanding. That is not correct. The counsel had filed a motion to terminate. Indeed, if you look at the record, additional charges were made after the motion to terminate was denied, which gives you an indication that the government in no way felt comfortable that there had been any admission or a finding of removability. Otherwise, why would you lodge additional charges? So he's just wrong about that. That is correct. He's stating the record. Yes, ma'am. Thank you. Thank you both. The case is submitted. The court will stand in recess for the day.
judges: Reinhardt, Berzon, Callahan